## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EMERGENCY COALITION TO DEFEND,    )
EDUCATIONAL TRAVEL ("ECDET"); WAYNE )
S. SMITH; JOHN W. COTMAN; JESSICA     )
KAMEN; ADNAN AHMAD,                   )
                                        )
        Plaintiffs,                 )     Case No. 1:06-CV-01215
                                   )     Judge Ellen S. Huvelle
         v.                     )
                                   )
UNITED STATES DEPARTMENT OF THE    )
TREASURY; HENRY M. PAULSON, JR.,     )
Secretary of the United States Department of the )
Treasury; THE OFFICE OF FOREIGN     )
ASSETS CONTROL; ADAM J. SZUBIN,    )
Director of the Office of Foreign Assets Control, )
                                   )
        Defendants.            )
_____ )

### Declaration of Adnan Ahmad

1.  I am an undergraduate student majoring in International Studies at Johns Hopkins University.  In pursuit of my academic interests in international relations, urban policy, and developmental economics, I spent a winter inter-session in Cuba as a student in the Johns Hopkins University's Cuba Exchange Program.  The course was of two weeks' duration and focused on Cuban culture and history.  While in Cuba, studying in the Johns Hopkins' program, I was able to conduct research on Cuban housing policy.

2.  My interests in Cuba have developed through coursework at the Johns Hopkins Institute for Policy Studies, research at the Housing Authority of Baltimore City, and Plaintiff Professor Wayne Smith's seminar on U.S.-Cuban relations.  As a result of the OFAC rulemaking challenged in this action, I cannot develop further my academic interests in Cuba through further study there.  Johns Hopkins' no longer offers courses in that country because of OFAC's actions June 16, 2004.  Nor may I attend any other U.S. universities' courses in Cuba because the OFAC rules now prohibit this.

3.  If OFAC had not effectively abolished Johns Hopkins' courses in Cuba I certainly would have studied there again.  I recently completed a senior honors paper in March on Cuban economic policies that would have benefited greatly from in-country research.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, to the best of my knowledge.  Executed on March 29th, 2007.

Baltimore, MD

Respectfully submitted,

/s/ Adnan Ahmad

Adnan Ahmad
3000 North Calvert Street
Baltimore, MD 21218
Aahmad6@jhu.edu
(314) 616-7139

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EMERGENCY COALITION TO DEFEND,           )
EDUCATIONAL TRAVEL ("ECDET"); WAYNE )
S. SMITH; JOHN W. COTMAN; JESSICA        )
KAMEN; ADNAN AHMAD,                      )
                                         )
      Plaintiffs,                      )          Case No. 1:06-CV-01215
                                         )          Judge Ellen S. Huvelle
      v.                               )
                                         )
UNITED STATES DEPARTMENT OF THE          )
TREASURY; HENRY M. PAULSON, JR.,         )
Secretary of the United States Department of the )
Treasury; THE OFFICE OF FOREIGN          )
ASSETS CONTROL; ADAM J. SZUBIN,          )
Director of the Office of Foreign Assets Control, )
                                         )
      Defendants.                      )
_____ )

### Declaration of Eduardo González

I, Eduardo González, hereby declare:

1. Between 1997 and 2004 I was in charge of the Johns Hopkins' Academic Exchange Program with the Fernando Ortiz Foundation in Havana. At the start the Ortiz Foundation hosted Hopkins faculty and students in affiliation with the University of Havana and later on with the Ministry of Culture.

2. Between 1997 and 2000 the Program was administered by The Johns Hopkins University Cuba Exchange Program funded by the Ford Foundation. From 2001 to its cessation in 2004 the Exchange Program Cuba Seminar was self-financed with income from the student participants and private donations.

3. Seminar activities in Cuba lasted an average of 15 to 20 days in January during the intersession recess period between semesters. A group of between 20 to 30 students was selected based on class rank as juniors or seniors, high GPA, and interview evaluation. The students registered for a three-credit course in Interdisciplinary Studies with the School of Arts and Sciences. The course required a reading list and a final research paper to be finished during the spring semester after the Seminar in Cuba.

4. Activities in Cuba included eight two-hour Seminar sessions lead by Cuban academics and scholars and artists and writers. The student participants visited

sites of cultural and historical interest throughout Cuba chosen for their specific relevance to the topic discussed in that year's Seminar.  The evaluations submitted by the students consistently ranked the Seminar as their outstanding academic experience at Johns Hopkins and as one of the best courses ever taken.

5.  In addition to the January seminar just described Hopkins sent groups of student majors in Public Health to Cuba during the summers of 2001, 02, 03 for a four-week course given and the National School of Public Health in Havana.  As in the case of the January Seminar students registered in a course that offered 3 credits toward their major in Public Health or collateral credit in majors related to the Pre-Med or IR or International Relations track.

6.  Bottom line: the restrictions implemented by the Bush Administration forced the cancellation of the academic exchange activities just described, as it became impossible for our Cuba Exchange Program at Hopkins to develop institutional resources to support an extended 10 weeks long course in Cuba as stipulated by the new OFAC restrictions.  As a result, just as study abroad programs on campus experienced a boom, the doors of access of similar programs in Cuba have remained shut.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, to the best of my knowledge.  Executed on March 29, 2007.

Baltimore, MD

Respectfully submitted,

/s/ Eduardo González

Eduardo González
Head of the Spanish and Latin American Section
Department of German and Romance Languages
and Literatures
The Johns Hopkins University
3400 North Charles Street
Baltimore, MD 21218-2687

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EMERGENCY COALITION TO DEFEND,    )
EDUCATIONAL TRAVEL ("ECDET"); WAYNE )
S. SMITH; JOHN W. COTMAN; JESSICA  )
KAMEN; ADNAN AHMAD,                )
                                   )
　　　　Plaintiffs,                  )    Case No. 1:06-CV-01215
                                   )    Judge Ellen S. Huvelle
　　　　　　v.                         )
                                   )
UNITED STATES DEPARTMENT OF THE    )
TREASURY; HENRY M. PAULSON, JR.,   )
Secretary of the United States Department of the )
Treasury; THE OFFICE OF FOREIGN    )
ASSETS CONTROL; ADAM J. SZUBIN,    )
Director of the Office of Foreign Assets Control, )
                                   )
　　　　Defendants.                  )
_____ )

### Declaration of Gilbert W. Merkx

　　　　I, Gilbert W. Merkx, hereby declare:

1.　I am the Vice Provost for International Affairs and Development Director for the Center for International Studies at Duke University.

2.　We at Duke University generally operated a six week, two course summer program in Cuba that attracted about 10-14 undergraduate students each summer. Between 1998 and 2004 we operated the program four times. Duke University has not operated the program as a direct result of the OFAC' actions that are the subject of this lawsuit.

3.　Subsequent to OFAC's actions, we had no choice but to terminate our academic programs in Cuba. If those actions are overturned, Duke University would reinstate its programs in Cuba.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, to the best of my knowledge. Executed on March 29th, 2007.

Durham, NC

Respectfully submitted,

/s/ Gilbert W. Merkx

Gilbert W. Merkx
Vice Provost for International Affairs and
Development
Director, Center for International Studies
Duke University
103-B Allen Building
Durham, NC 27708-0006

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EMERGENCY COALITION TO DEFEND,        )
EDUCATIONAL TRAVEL ("ECDET"); WAYNE )
S. SMITH; JOHN W. COTMAN; JESSICA     )
KAMEN; ADNAN AHMAD,                    )
                                       )
        Plaintiffs,                    )        Case No. 1:06-CV-01215
                                       )        Judge Ellen S. Huvelle
        v.                             )
                                       )
UNITED STATES DEPARTMENT OF THE        )
TREASURY; HENRY M. PAULSON, JR.,       )
Secretary of the United States Department of the )
Treasury; THE OFFICE OF FOREIGN        )
ASSETS CONTROL; ADAM J. SZUBIN,        )
Director of the Office of Foreign Assets Control, )
                                       )
        Defendants.                    )
_____ )

### Declaration of Helen Stellmaker

        I, Helen Stellmaker, hereby declare:

1.  I am Coordinator of Program Advising and Student Activities in the International and Off-Campus Studies Office at St. Olaf College.

2.  As a result of OFAC's actions that are the subject of this case, St. Olaf College was forced to terminate its academic programs in Cuba.  St. Olaf College sent groups to Cuba during our four week programs in January of the following years: 1997: 24; 1999: 24; 2000: 30; 2001: 30; 2002: 54; 2004: 54; 2005: 0; 2006: 0; 2007: 0.

3.  Following the actions of OFAC, we had no choice but to end our academic programs in Cuba.  St. Olaf College would immediately resume its terminated programs in Cuba upon reversal of the OFAC actions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, to the best of my knowledge.  Executed on March 29, 2007.

Northfield, MN

Respectfully submitted,

<u>/s/ Helen Stellmaker</u>

Helen Stellmaker
International & Off-Campus Studies
St. Olaf College
1520 St. Olaf Avenue
Northfield, Minnesota 55057

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EMERGENCY COALITION TO DEFEND,              )
EDUCATIONAL TRAVEL ("ECDET"); WAYNE )
S. SMITH; JOHN W. COTMAN; JESSICA           )
KAMEN; ADNAN AHMAD,                         )
                                            )
    Plaintiffs,                                )         Case No. 1:06-CV-01215
                                            )         Judge Ellen S. Huvelle
    v.                                         )
                                            )
UNITED STATES DEPARTMENT OF THE             )
TREASURY; HENRY M. PAULSON, JR.,            )
Secretary of the United States Department of the )
Treasury; THE OFFICE OF FOREIGN             )
ASSETS CONTROL; ADAM J. SZUBIN,             )
Director of the Office of Foreign Assets Control, )
                                            )
    Defendants.                                )
_____ )

### Declaration of Jessica Kamen

1. I am an undergraduate student at Johns Hopkins University (JHU) where I am pursuing a degree in Political Science, with minors in Spanish Language and Hispanic Culture. I have taken a class taught by Plaintiff Professor Wayne Smith: "Cuba and U.S. Decision-Making," from which I sought to develop further knowledge of U.S.-Cuba relations through participation in a for-credit course in Cuba. In order to graduate on schedule, such a course would have to be inter-sessional; that is, a course offered between semesters.

2. In the spring of 2006 I inquired as to what courses in Cuba are offered by Johns Hopkins. I was told that the University cancelled all of its programs in Cuba as a result of the OFAC rulemaking of June 16, 2004 and therefore I would have no opportunity to study in that country.

3. If not for the OFAC rule changes that terminated Johns Hopkins' courses in Cuba, I certainly would have studied there.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, to the best of my knowledge. Executed on March 29, 2007.

Baltimore, MD

Respectfully submitted,

<u>/s/ Jessica Kamen</u>

Jessica Kamen
Student at Johns Hopkins University
2123 California St. NW#E9
Washington, D.C. 20008

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

EMERGENCY COALITION TO DEFEND,⠀⠀)
EDUCATIONAL TRAVEL ("ECDET"); WAYNE )
S. SMITH; JOHN W. COTMAN; JESSICA⠀⠀)
KAMEN; ADNAN AHMAD,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Plaintiffs,⠀⠀⠀⠀⠀)⠀⠀⠀Case No. 1:06-CV-01215
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Judge Ellen S. Huvelle
⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
UNITED STATES DEPARTMENT OF THE⠀⠀)
TREASURY; HENRY M. PAULSON, JR.,⠀⠀)
Secretary of the United States Department of the⠀⠀)
Treasury; THE OFFICE OF FOREIGN⠀⠀)
ASSETS CONTROL; ADAM J. SZUBIN,⠀⠀)
Director of the Office of Foreign Assets Control,⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Defendants.⠀⠀⠀⠀)
_____ )

### Declaration of John W. Cotman

⠀⠀⠀⠀I, John W. Cotman, hereby declare:

1. I am an associate professor of political science at Howard University ("HU") in
   Washington, the District of Columbia.

2. I joined the faculty at HU in August of 1990 as an instructor of political science. I
   became an assistant professor in 1991, and a tenured associate professor in 1996. I
   joined the faculty at HU to pursue my research interests in Cuban foreign
   relations, particularly with the English-speaking nations of the Caribbean
   Community and Common Market ("CARICOM"). My professional memberships
   include the American Political Science Association, the Latin American Studies
   Association, and the Middle Atlantic Council of Latin American Studies. I
   currently serve as the secretary-treasurer of the Gamma of the District of
   Columbia chapter of Phi Beta Kappa.

3. I obtained my B.A. in political science at the University of Colorado in Boulder in
   1977. My graduate training included one year at Yale University as a member of
   the political science department and the Southern Africa Research Program. I
   earned my M.A. in political science at Boston University in 1987. I received my
   Ph.D. in political science at Boston University in 1992.

4. My primary scholarly interests are comparative politics and international relations

in the Greater Caribbean, including a secondary scholarly interest in regional integration and South-South cooperation in the Caribbean between Cuba and the CARICOM states. I also have begun research on a biography of the former Grenadian political leader Maurice Bishop.

5.  My publications include:
    a.  "Caribbean Convergence: Contemporary Cuba-CARICOM Relations," in H. Michael Erisman & John M. Kirk, editors, *Redefining Cuban Foreign Policy: The Impact of the "Special Period,"* University Press of Florida (2006)
    b.  Eloise Linger & John Cotman, editors, *Cuban Transitions at the Millennium,* International Development Options (2000)
    c.  "Caribbean Convergence: Cuba-CARICOM Relation Through 1995," in *Cuban Transitions at the Millennium.*
    d.  *The Gorrión Tree: Cuba & the Grenada Revolution,* Peter Lang Publishing (1993)

6.  My graduate and undergraduate courses include: "Caribbean Political Systems," "Government & Politics of Central America & the Caribbean," and "Politics of the 'Third World.'" I helped lead the creation of an interdisciplinary honors undergraduate International Affairs Program in the College of Arts and Sciences ("COAS") at HU in 2003. I am also a member of the Caribbean Studies Minor in COAS at HU.

7.  As a Ford Foundation Dissertation Fellow I participated in a two-week seminar on Cuban International Relations hosted by the University of Havana in 1987. As a Fulbright Dissertation Fellow, I conducted 11 months of fieldwork in Grenada from October 1988 until August 1989. My research concerned Cuba's relations with the People's Revolutionary Government of Grenada, led by Maurice Bishop from 1979-83. As a Ford Foundation Postdoctoral Fellow and Visiting Scholar in the School of International Service at American University, I conducted three weeks of research in Cuba during the spring of 1995. The focus was Cuba's expanding links with CARICOM.

8.  Although parental responsibilities have limited fieldwork in Cuba since 1995, I have continued my scholarly work on Cuba and CARICOM relations as a possible alternative model of regional economic cooperation and development in the Greater Caribbean.

9.  There is great interest among the faculty and students at HU in academic exchange with Cuba. However, restrictions placed on educational travel to Cuba by the Treasury Department's Office of Foreign Assets Control ("OFAC") on June 16, 2004 eliminated opportunities available to HU students to participate in the face-to-face academic programs in Cuba cited below.

10. The HU Project on Appropriate Technology was an initiative of Professor John P.

Tharakan (Chemical Engineering) and Associate Professor John Trimble (Systems and Computer Science). They served as faculty advisors for a group of 18 HU students who visited Cuba in the spring of 2003 to learn about the isle's experiences in appropriate technology. The professors planned to repeat the field study in spring break 2004 as part of the interdisciplinary course "Philosophy and Ethics of Appropriate Technology" [PHIL 164] with faculty from Philosophy, Sociology/Anthropology & Biology. Due to U.S. Department of Treasury restrictions the field study to Cuba could not be offered as part of course in spring 2004 & 2005. A scholarly article on the course, "Broadening the Horizons of Students: An Elective Seminar Course on Ethics and the Philosophy of Appropriate Technology" won a 2005 UICEE Platinum (Second Place) Award at the 8th UNESCO International Centre for Engineering Education (UICEE) in Kingston, Jamaica.

11. Professor Starmanda Bullock (Art) offers the course: "Field Study in Design" – ARTD 120 (3 credits). In spring semester 2001, 2002, and 2003 HU students enrolled in the course participated in academic programming in Cuba during spring break. Approximately ten undergraduate & graduate students participated each year. Due to Treasury Department rules the spring break field study to Cuba was cancelled in spring 2005.

12. Dean Kurt L. Schmoke of the HU School of Law visited Cuba in 2003 to discuss establishing an academic partnership with Law Faculty at University of Havana. Professor Christi Cunningham made a follow up visit in 2004. Drafts of Memoranda of Understanding were prepared. This initiative collapsed due to June 2004 Treasury Department restrictions.

13. OFAC restrictions of June 2004 have had a devastating effect on academic programs at Howard University involving student course offerings in Cuba. In December 2005 I wrote a report titled *Impact of Revised United States Department of Treasury Regulations Concerning Travel to the Republic of Cuba on Academic Programs at Howard University*. My findings were published in the January 2006 issue of *The Senate Communicator*, the official publication of HU Faculty Senate. To the best of my knowledge HU currently has no full-semester undergraduate courses in Cuba because of insufficient resources to establish such courses. Therefore, my only option to teach undergraduate students regarding the potentialities of heightened regional cooperation between Cuba and CARICOM would be at another U.S.-based university program. However, the OFAC rule changes of June 16, 2004 prohibit me from teaching another university's course in Cuba. Even if HU had the resources to establish such a course and the student flexibility to spend an entire semester in Cuba – both of which do not exist – professional and domestic duties would not allow me to spend a minimum period of ten weeks in Cuba for any course I might teach there. I therefore normally teach five-week undergraduate courses during the summer break. I have done so at Howard University and previously at Cape Cod Community College.

3

14. In conclusion, the OFAC rule changes have made it impossible for me to train in Cuba students from HU in my area of expertise. Additionally, the 2004 OFAC rule changes have made it impossible for me to train in Cuba students from other United States-based academic institutions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, to the best of my knowledge.  Executed on March 28, 2007.

Washington, DC

Respectfully submitted,

/s/ John W. Cotman

John W. Cotman
Associate Professor of Political Science
Howard University
2400 Sixth Street, NW
Washington, DC 20059

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| EMERGENCY COALITION TO DEFEND, | ) | |
| EDUCATIONAL TRAVEL ("ECDET"); WAYNE | ) | |
| S. SMITH; JOHN W. COTMAN; JESSICA | ) | |
| KAMEN; ADNAN AHMAD, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:06-CV-01215 |
| | ) | Judge Ellen S. Huvelle |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF THE | ) | |
| TREASURY; HENRY M. PAULSON, JR., | ) | |
| Secretary of the United States Department of the | ) | |
| Treasury; THE OFFICE OF FOREIGN | ) | |
| ASSETS CONTROL; ADAM J. SZUBIN, | ) | |
| Director of the Office of Foreign Assets Control, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**Declaration of Nancy Zingale**

I, Nancy Zingale, hereby declare:

1. I am a Professor of Political Science at the University of St. Thomas, and I work in the office of the President of the University.

2. As a direct result of OFAC's actions that are the subject of this lawsuit, St. Thomas University was forced to terminate its academic programs in Cuba. In the years immediately preceding the action, the following number of students participated in St. Thomas University programs in Cuba: 1999-2000: 21; 2000-2001: 23; 2001-2002: 35; 2002-2003: 15; 2003-2004: 7; 2005-2006: 0; 2006-2007: 0.

3. I think it is important to emphasize that it is the interaction of two restrictions that make it difficult for U.S. colleges and universities to now conduct academic programs in Cuba: The requirement that a course be a semester in length and that all the students in the program must be full-time students at that institution. The difficulty with a semester-long study abroad program (anywhere) is that the number of students at any given institution who are interested in spending an entire semester in any other country is rather small. Therefore, most such programs "collect" students from a number of cooperating colleges and universities in order to fill a program. The new OFAC regulations make this impossible and therefore have effectively shut down the programs, since no one

institution has enough students to send to Cuba under these circumstances. Most institutions (have very few semester-long programs in any but the most popular countries (England, France, Italy) OR they accept students from other institutions in order to fill them out.

4. We had no choice but to terminate St. Thomas University's academic programs in Cuba following the actions of OFAC. If its actions are reversed, St. Thomas University would immediately recommence those programs in Cuba.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, to the best of my knowledge. Executed on March 29, 2007.

St. Paul, MN

Respectfully submitted,

/s/ Nancy Zingale

Nancy Zingale
Professor of Political Science/Office of the President
University of St. Thomas
2115 Summit Ave.
St. Paul, MN 55105

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EMERGENCY COALITION TO DEFEND,  )
EDUCATIONAL TRAVEL ("ECDET"); WAYNE )
S. SMITH; JOHN W. COTMAN; JESSICA )
KAMEN; ADNAN AHMAD, )
)
        Plaintiffs, )    Case No. 1:06-CV-01215
)     Judge Ellen S. Huvelle
        v. )
)
UNITED STATES DEPARTMENT OF THE )
TREASURY; HENRY M. PAULSON, JR., )
Secretary of the United States Department of the )
Treasury; THE OFFICE OF FOREIGN )
ASSETS CONTROL; ADAM J. SZUBIN, )
Director of the Office of Foreign Assets Control, )
)
        Defendants. )
_____ )

### Declaration of Nicholas A. Robins

I, Nicholas A. Robins, hereby declare:

1. I am at presently a Visiting Scholar at the Center for Latin American and Caribbean Studies at Duke University.

2. For a period of 6 years I was responsible for Tulane University's programs in Cuba. I am therefore knowledgeable in the practicalities of U.S. colleges and universities establishing and maintaining for-credit courses in Cuba for their students.

3. To establish, as the OFAC rules now require, a semester-length course in Cuba is simply not feasible for the vast majority of U.S. colleges and universities. In the first place, the expense and inevitable complications of organizing and properly supervising such a program is much higher in Cuba than in other countries, and this is especially so with semester length programs. Thus, it serves as a logistical and financial disincentive for universities. Second, many students, and their parents, prefer to have shorter international experiences than longer ones, either for reasons of cost, scheduling other activities, meeting graduation requirements, or due to health or security concerns. Third, most universities are reluctant to commit to the expense of an on-site professor in charge for a semester, as opposed to a summer, length course, especially one which by its nature is more expensive, and hence less likely to attract a significant number of students. Fourth, while it

is theoretically possible for a student to enroll directly in a university in Cuba for a semester, such an approach presents almost insurmountable obstacles in terms of transferring academic credit from Cuba to their home institution, especially in the absence of an on-site professor in charge.

4. For the reasons given above, U.S. college and universities closed their programs en masse when OFAC on June 16, 2004 changed the rules relating to U.S. academic programs in Cuba to require that they be of ten weeks duration or more.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, to the best of my knowledge. Executed on March 29th, 2007.

Durham, NC

Respectfully submitted,

/s/ Nicholas A. Robins

Nicholas A. Robins
Visiting Scholar
Center for Latin American and Caribbean Studies
Duke University
2114 Campus Drive
Durham, NC, 27708

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

EMERGENCY COALITION TO DEFEND          )
EDUCATIONAL TRAVEL ("ECDET"); WAYNE )
S. SMITH; JOHN W. COTMAN; JESSICA      )
KAMEN; ADNAN AHMAD,                     )
                                        )
      Plaintiffs,                      )          Case No. 1:06-CV-01215
                                        )          Judge Ellen S. Huvelle
      v.                               )
                                        )
UNITED STATES DEPARTMENT OF THE        )
TREASURY; HENRY M PAULSON, JR.,        )
Secretary of the United States Department of the )
Treasury, THE OFFICE OF FOREIGN        )
ASSESTS CONTROL; ADAM SZUBIN,          )
Director of the Office of Foreign Assets Control, )
                                        )
      Defendants.                      )
_____)

### Declaration of Wayne S. Smith

    I, Wayne S. Smith, hereby declare:

1. I am both an Adjunct Professor of Latin American Studies and the Director of the Cuba Exchange Program at the Johns Hopkins University in Baltimore, MD. In addition I am the Director of the Cuba Program at the Center for International Policy (CIP), Washington, DC.

2. I hold a Ph.D. in International Affairs from George Washington University in Washington, D.C. My area of academic expertise is Latin America.

3. I have been involved directly in US-Cuban relations for over fifty years now, having begun in early 1957 as an analyst in the Department of State's Bureau of Intelligence and Research, just after Castro had returned to Cuba on December 2 of 1956 to begin his guerrilla war against the Batista regime. Shortly over a year later, having taken the Foreign Service exam and been brought into the Foreign Service, I was immediately transferred to Havana, arriving in July of 1958, in the midst of the civil war. I saw Castro ride into Havana on a tank in January of 1959. Shortly thereafter, I was appointed Third Secretary of Political Affairs and became aide to Ambassador Philip Bonsal. I was still in Havana when we broke diplomatic relations on January 3 of 1961.

4. Some sixteen years later, in March of 1977, I was part of the American delegation that opened the first talks with the Cubans, in New York, and then continued those talks the next month in Havana. These discussions led to the opening on interests sections in one another's capitals in September of 1977. At that point, I became Director of Cuban Affairs in the Department of State, until July of 1979, when I was transferred to Havana as Chief of Mission of the U.S. Interests Section there. I remained in that position until June of 1982, when, because of what I saw as misleading and counterproductive statements on the part of the U.S. government, I asked to be transferred from Havana and given a post unrelated to policy until such time as I could take early retirement from the Foreign Service. I left the Foreign Service in August of 1982.

5. I then spent two years at the Carnegie Endowment for International Peace working on US-Cuban relations, but also, in 1983, I began teaching at the Johns Hopkins School of Advanced International Studies (SAIS). Most of my courses had to do with US-Cuban relations, though some also focused on Argentina and on US-Latin American relations in a broader context. At SAIS, we also had an exchange program with the Center for the Study of the United States in Havana. We did conferences with them, had study programs in Havana and brought their scholars to Washington for periods of two to three months to do research on various projects. This rather ambitious program, I would note, was carried out during and with the approval of the Reagan Administration. While at SAIS, I published my best-known book, *The Closest of Enemies: A Personal and Diplomatic History of the Castro Years."*

6. In 1992, I began teaching at the Homewood, MD campus of the Johns Hopkins University, rather than at SAIS, and I also moved the Cuba Exchange Program from SAIS to the Homewood campus at that time. During the first few years, we hosted a number of Cuban scholars at Homewood in addition to taking our students to Cuba for condensed special programs. After 1996, however, this two-way flow became impossible to continue, given that Cuban scholars were simply not given visas to come to the U.S.

7. From 1997 until we were prevented from doing so by OFAC's 2004 amendments to 31 CFR § 515.565, we took our Johns Hopkins' students to Cuba on intersessional programs i.e. between semesters. Some 15 to 20 students would spend three weeks in Cuba in January, between semesters, studying some aspect of Cuban politics, culture or history. In January of 1998, for example, we were able to organize the program during the Pope's visit to Havana, and so, the focus that year was of course on religion in Cuba. Among other subjects addressed were Afro-Cubans in Cuban Society, and Cuban Culture. We often took a smaller group, usually six to eight students, for a three week course in June on Cuba's System of Public Health, taught at the Cuba Institute of Public Health.

8. These intersession programs were a great success and were especially popular because they were sharply focused and did not interfere with students' graduation

plans. Our students were not interested in semester-long courses which would have delayed their graduation schedules. Hence, as the 2004 OFAC amendments became effective and Johns Hopkins was forced to cancel the intersession programs it had offered since 1997, its Cuba Exchange Program, in effect, died.

9. We would have continued those short programs, indeed, were already discussing the different possible focuses of the program for January of 2005 at the time of the OFAC rule change. As always, I, and doubtless Prof. Eduardo Gonzalez, would have accompanied the group to Havana and shared in teaching the course. We were directly prevented from doing so by the 2004 amendment to 31 CFR § 515.565 that prohibited courses of less than ten weeks in length, and my case – even if we could have arranged a course of that duration, which we could not – I would have been prohibited from teaching it as a result of the OFAC rule change that decreed only "full-time permanent" employees of a U.S. college or university could teach U.S. students in Cuba.

10. I have taught at Hopkins for some 24 years now, and have been Director of the Cuba Exchange Program for 15 years. I would not choose to become a full-time faculty member, if it were offered, because I have other pursuits, also related to Cuba, which take up part of my time. For example, as I mentioned, I am a Senior Fellow at the Center for International Policy in Washington, D.C. and run its Cuba Program as well. This in no way interferes with my duties at John Hopkins. On the contrary, the one often contributes to the other. To take the position, as the Treasury Department does, that because I am an Adjunct Professor, I cannot teach a course in Cuba, strikes me as arbitrary and illogical in the extreme.

11. The government contends with respect to another Plaintiff in this case that she was free to enroll in a Cuban university after Johns Hopkins' programs were cancelled due to OFAC's action. In my extensive experience of higher education in Cuba this would be next to impossible. Cuba does not wish to have American undergraduate students in the country without the oversight of U.S. colleges or universities – so visas are extremely unlikely to be issued to someone who wishes to simply enroll in a Cuban university. Additionally there is the problem of language fluency. To assume a full course load in a Cuban institution of higher learning would require great proficiency in Spanish. (Cuban universities do not offer courses in an English medium). Finally, there is the problem of crediting a student's course at a Cuban university toward his or her degree.

12. What seems to be the only justification put forward for the Defendants' prohibition of courses of less than ten weeks duration appears on page 30 of the Commission Report under the section on "Educational Travel."  It holds that shorter courses: "…allow for limited interaction with the Cuban people, and include lengthy unscheduled time periods to permit largely tourist activities to be accomplished. Such travel does not promote a genuinely free exchange of ideas between Cubans and American students. Evidence indicates that the majority of visits by U.S. students are organized by or coordinated through Cuban state travel

and tour entities, is highly controlled by Cuban state security officials, and allow for only limited interaction with the average Cuban citizen."

13. Based upon the direct knowledge I have acquired over many years of teaching intersession courses in Cuba for Johns Hopkins students, and from having observed dozens of such courses from other colleges and universities, I must assert that the statements quoted above from the Commission Report are largely untrue and grossly misleading. While the Hopkins intersession courses were of only two-three weeks duration, they were tightly structured, intensive and with considerable interaction with the Cuban people – especially with Cuban students. Certainly there were no "lengthy unscheduled time periods to permit largely tourist activities."  That seemed to be the case as well with the programs we observed from other colleges and universities. They seemed to be operating on tight schedules. Much less were our programs "highly controlled by Cuban state security officials." Neither did I ever hear those leading other study programs complain of being in any way controlled by state security officials.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, to the best of my knowledge. Executed on March 29, 2007.

Baltimore, MD

Respectfully submitted,

/s/ Wayne S. Smith

Wayne S. Smith
Director, Cuba Exchange Program
312 Gilman Hall
Johns Hopkins University
3400 N. Charles St.
Baltimore, MD 21218-2690