IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMERGENCY COALITION TO DEFEND, ) <br> EDUCATIONAL TRAVEL ("ECDET"); WAYNE ) <br> S. SMITH; JOHN W. COTMAN; JESSICA ) <br> KAMEN; ADNAN AHMAD, ) <br>  ) <br> Plaintiffs, ) <br>  ) <br> v. ) <br>  ) <br> UNITED STATES DEPARTMENT OF THE ) <br> TREASURY; HENRY M. PAULSON, JR., ) <br> Secretary of the United States Department of the ) <br> Treasury; THE OFFICE OF FOREIGN ) <br> ASSETS CONTROL; ADAM J. SZUBIN, ) <br> Director of the Office of Foreign Assets Control, ) <br>  ) <br> Defendants. ) <br> _____ ) | Case No. 1:06-CV-01215 <br> Judge Ellen S. Huvelle |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF
UNDISPUTED MATERIAL FACTS AND COUNTERSTATEMENT OF FACTS
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT**

Pursuant to Local Rule LCvR 7 (h), Plaintiffs' submit this response to Defendants' Statement of Material Facts as to which Defendants contend there is no genuine issue, and at the same time submit this counterstatement of facts.

Plaintiffs maintain that the Court's evaluation of the decisions the Office of Foreign Assets Control made in its June 16, 2004 rulemaking were based on an inadequate administrative record in this case. Plaintiffs further maintain that Defendants' Summary Judgment Motion should be denied because there are genuine disputes as to many of the facts Defendants asserted are undisputed as set forth below. Finally, if the Court believes that no such disputes exist on the current record, Plaintiffs have identified facts as to which they believe that they are entitled to take discovery.

| **Defendants' Statement No. 1** | **Plaintiffs' Response And Counterstatement** |
|---|---|
| **Background of the Parties**<br><br>1.  The Office of Foreign Assets Control ("OFAC") is the office within the Department of the Treasury ("Treasury") that is principally responsible for administering United States economic sanctions programs to implement U.S. foreign policy and national security goals. Declaration of Adam J. Szubin, Director of OFAC ("Szubin Decl.") ¶¶ 4,5. | 1. The implementation of "U.S. foreign policy and national security goals" by OFAC must conform to the constitutional requirements of the Bill of Rights and must meet the requirements of the Administrative Procedures Act (APA) if they are to be held valid upon judicial review by the Court. *United States v. Robel*, 389 U.S. 258, 264 (1967); 5 U.S.C. 70 6 (2)(A). |
| **Defendants' Statement No. 2** | **Plaintiffs' Response And Counterstatement** |
| 2.  OFAC has been delegated authority under the Trading with the Enemy Act ("TWEA"), 50 U.S.C. App. ¶¶ 1-44, to regulate transactions in which Cuba or a Cuban national has an interest. *See* Szubin Decl. ¶¶ 4, 6-9, 11. | 2.  Any attempt by OFAC to "regulate transactions between Cuba or Cuban nationals" and U.S. citizens engaged in academic activities in Cuba is subject to a finding by the Court that such regulation is both constitutional and in conformity with the APA's requirements for valid agency action. See above authorities. |
| **Defendants' Statement No. 3** | **Plaintiffs' Response And Counterstatement** |
| 3.  Plaintiff ECDET characterizes itself as "a coalition of higher academic professionals who are affiliated, in academic capacities, with accredited colleges and universities across the United States. Compl. ¶ 4.  ECDET's membership does not include academic institutions, but only individual academics.  *See id.* http://www.ecdet.org/members.htm#4, last visited Feb. 2, 2007. | 3.  Defendants correctly characterize ECDET. As an organization formed to protect the academic freedom of professors and administrators.  ECDET does not seek or admit institutional members. |
| **Defendants' Statement No. 4** | **Plaintiffs' Response And Counterstatement** |
| 4.  Plaintiff Wayne Smith is a part-time employee of Johns Hopkins University. *See* Compl. ¶¶ 5, 24(iii). | 4.  Plaintiff Wayne S. Smith is an Adjunct Professor at Johns Hopkins University; as such he is a part-time employee. |
| **Defendants' Statement No. 5** | **Plaintiffs' Response And Counterstatement** |
| 5.  Plaintiff John Cotman is employed by Howard University.  *See* Compl. ¶ 6. | 5.  Plaintiff John Cotman is an Associate Professor of political science and is employed in a full-time capacity by Howard University. |

| **Defendants' Statement No. 6** | **Plaintiffs' Response And Counterstatement** |
|---|---|
| 6. Plaintiff Jessica Kamen alleges that she is an undergraduate student at Johns Hopkins University, scheduled to graduate in 2007. *See* Compl. ¶ 7. | 6. Defendants correctly describe Plaintiff Jessica Kamen. |
| **Defendants' Statement No. 7** | **Plaintiffs' Response And Counterstatement** |
| 7. Plaintiff Adnan Ahmad is an undergraduate student at Johns Hopkins University, who alleges that he expects to graduate in 2007. *See* Compl. ¶ 8. Ahmad has already traveled to Cuba through Johns Hopkins University's Cuba Exchange program, spending two weeks in Cuba during the winter, and receiving three semester hours for the two week trip towards his undergraduate degree. *Id.* | 7. Defendants correctly describe Plaintiff Adnan Ahmad. |
| **Defendants' Statement No. 8** | **Plaintiffs' Response And Counterstatement** |
| **General Background of the Regulation of Educational Travel under the CACR**<br><br>8. A major purpose of the embargo has been to deny the Castro government hard currency which could be used for purposes inimical to the interests of the United States. *See* Szubin Decl. ¶ 14. | 8. Defendants claim that a major purpose of the U.S. embargo on Cuba is denying "the Castro government hard currency," but at the same time OFAC authorizes, under its embargo authority, remittances to Cuba from Cuban Americans of up to $1 billion a year. Any "purpose" of the embargo on Cuba is subject to constitutional constraints and the means adopted to achieve any purpose of the embargo that infringe on U.S. citizens' constitutional rights must meet the requirements of the APA and survive judicial scrutiny. *Milena Ship Management Co. v. Newcomb*, 804 F. Supp. 846 (E.D. LA. 1992) affd. 995 F.2d 620 (5th Cir. 1993).<br><br>    In this case, Defendants' action was taken not to "deny the Castro government hard currency which could be used for purposes inimical to the interests of the United States," but rather "to hasten the transition to democracy in Cuba." This does not meet the requirement that OFAC must show that its action was "supported by the weightiest considerations of national security." *Zemel v. Rusk*, 381 U.S. 1, 16 |

3

|  | (1965). |
|---|---|
| **Defendants' Statement No. 9** | **Plaintiffs' Response And Counterstatement** |
| 9. The Cuban Asset Control Regulations, ("CACR") have long restricted transactions involving travel to Cuba, including educational travel to Cuba. *See* Szubin Decl. ¶ 14. | 9. That the CACR have restricted travel to Cuba does not mean that those restrictions were lawful. |
| **Defendants' Statement No. 10** | **Plaintiffs' Response And Counterstatement** |
| 10. The government's policy regarding permitted travel transactions has evolved over the course of the embargo to reflect changing international developments and different Administration policies. *See* Szubin Decl. ¶ 14. | 10. Plaintiffs would substitute the words "veered wildly" (rather than "evolved") to describe the government's policy regulating travel to Cuba by U.S. citizens. In 2000, Congress codified the Cuban travel regulations in a– thereby removing them from Executive Branch purview. Unless supported by the "weightiest considerations of national security" OFAC's restriction on educational travel were unconstitutional and for some years have been in direct contravention of the will of Congress. *Zemel v. Rusk*, 381 U.S. 1, 16 (1965). |
| **Defendants' Statement No. 11** | **Plaintiffs' Response And Counterstatement** |
| 11. Significant changes to the Regulations with regard to educational travel regarding Cuba have occurred over the past three decades. *See* Szubin Decl. ¶ 14. | 11. Plaintiffs agree and state further that Defendants' were stripped, by Congress, of the authority to change the regulations regarding educational travel to Cuba. Section 901, Trade Sanctions Reform Act, 2000 (TSRA). |
| **Defendants' Statement No. 12** | **Plaintiffs' Response And Counterstatement** |
| **The 2004 Amendments to 31 C.F.R. § 515.565**<br><br>12. On October 10, 2003, President Bush established an inter-agency Commission for Assistance to a Free Cuba ("CAFC I" or "the Commission"). *See* Szubin Decl. ¶ 15; President George W. Bush, Rose Garden Speech (Oct. 10, 2003), available at http://www.whitehouse.gov/news/ releases/2003/10/20031010-2.html, *last visited* Jan. 4, 2007. | 12. Plaintiffs do not dispute that President Bush established what was alleged to be "an inter-agency Commission." Without discovery Plaintiffs cannot address definitively the issue of which agency made the decision relating to U.S. academic travel to Cuba, and why. However all evidence points to its origin a unilateral decision by political appointees made such in order to secure the votes in the presidential election of 2006 of Cuban Americans resident in Florida. |
| **Defendants' Statement No. 13** | **Plaintiffs' Response And Counterstatement** |

4

| | |
|---|---|
| 13. Among the purposes of the Commission was to identify ways to hasten the arrival of Cuba's peaceful transition from a dictatorship to a free and open society. *See* Szubin Decl. ¶ 15; President George W. Bush, Rose Garden Speech (Oct. 10, 2003), available at http://www.whitehouse.gov/news/releases/2003/10/20031010-2.html, *last visited* Jan. 4, 2007; *see also* http://www.state.gov/p/wha/rt/cuba/c12238.htm, *last visited* Jan. 4, 2007. | 13.  It was claimed to be one of the purposes of the Commission to hasten a peaceful transition in Cuba.  In fact, the available evidence supports the conclusion that the punitive recommendations of the Commission, including greatly restricting U.S. academic programs in Cuba, had the purpose of ensuring support in Miami for President Bush's re-election in 2006. |
| **Defendants' Statement No. 14** | **Plaintiffs' Response And Counterstatement** |
| 14.  The Commission's report ("the CAFC I Report" or "the Report"), was released to the public on May 6, 2004. *See* Szubin Decl. ¶ 15; Comm'n for Assistance to a Free Cuba, Report to the President (2004), available at http://www.state.gov/p/wha/rt/cuba/commission/2004/, *last visited* Jan. 4, 2007. | 14.  The Report was released to the public on May 6, 2004. |
| **Defendants' Statement No. 15** | **Plaintiffs' Response And Counterstatement** |
| 15. In a section of Chapter 1 of the Report discussing the denial of revenues to the Castro regime, the Report identified tourism as one of the regime's economic lifelines and Cuba's single largest revenue source.  Administrative Record ("AR") (dkt. no. 7) at 41, 61-62; *see* Szubin Decl. ¶ 16. | 15.  It is a matter of dispute whether tourism, then or now, was one of the "regime's (*sic*) economic lifelines" and "Cuba's single largest revenue source."  Academic travel to Cuba was specifically denominated by Congress *not* to be tourism when it codified the Cuban travel restrictions at Section 901 of TSRA. |
| **Defendants' Statement No. 16** | **Plaintiffs' Response And Counterstatement** |
| 16.  In discussing the educational travel program in place at that time under the CACR, which included short-term licenses for structured educational activities, the Report also stated that "[i]n practice, while there are well-meaning participants who use this license category as intended, other travelers and academic institutions regularly abuse this license category and engage in a form of disguised tourism." AR at 63; *see* Szubin Decl. ¶ 16.  The | 16.  The Report's claims of the "regular abuse" of licenses for educational activities in Cuba are conclusory and devoid of evidence. In fact, the evidence to be derived from OFAC's own description of its enforcement of the embargo on Cuba indicates that there was virtually no abuse of licenses to conduct academic programs in Cuba.<br><br>     Defendants' contentions are untrue. Smith Decl. ¶ 13. |

5

| | |
|---|---|
| Report went on to state that:<br><br>Many institutions use Cuba "study-tour programs" to generate revenues for other programs and most accept students not enrolled in their institution. A large number of programs are for a short duration, allow for limited interaction with the Cuban people, and include lengthy unscheduled time periods to permit largely tourist activities to be accomplished. Such travel does not promote a genuinely free exchange of ideas between Cubans and American students. Evidence indicates that the majority of visits by U.S. students are organized by or coordinated through Cuban state travel and tour entities, are highly controlled by Cuban state security officials, and allow for only limited interaction with the average Cuban citizen. Moreover, the regime has often used the visits by U.S. education groups to cultivate the appearance of international legitimacy and openness to the exchange of ideas.<br><br>AR at 63; *see* Szubin Decl. ¶ 16. | |
| **Defendants' Statement No. 17** | **Plaintiffs' Response And Counterstatement** |
| 17. The CAFC Report made the following recommendation to the President:<br><br>Eliminate abuses of educational travel by limiting educational travel to only undergraduate or graduate degree granting institutions and only for full-semester study programs, or for shorter duration only when the program directly supports U.S. policy goals; requiring that the travelers be enrolled in a full-time course of study at the licensed institution; and requiring that educational institutional licenses be renewed annually, rather than bi-annually, to allow for improved enforcement of OFAC regulations.<br><br>AR at 65; *see* Szubin Decl. ¶ 16. | 17. The Commission's Report supplies no substantial evidence of abuses of educational travel, as required by the APA. |

| **Defendants' Statement No. 18** | **Plaintiffs' Response And Counterstatement** |
|---|---|
| 18. In response to the President's directive, OFAC modified several portions of the Regulations to incorporate the recommendations of the CAFC Report, including those pertaining to educational travel. See 69 Fed. Reg. 33768 (June 16, 2004). Section 515.565 was modified to remove the authorization for certain educational activities involving Cuba by secondary schools. *Id.* at 33769. The duration of a license issued to an accredited college or university under this section was shortened from two years to one. *Id.* at 33769-70. The June 16, 2004 amendments also modified section 515.565 to require that any student utilizing an institution's license to study in Cuba be enrolled in an undergraduate or graduate degree program at that institution, and clarified that employees traveling under an institution's license must be full-time permanent employees of the licensed institution. *Id.* at 33770. Additionally, section 515.565 was amended to require that the following three types of educational activity in Cuba be no shorter than 10 weeks in duration: (1) structured educational programs in Cuba offered as part of a course at the licensed institution; (2) formal courses of study at Cuban academic institutions; and, (3) teaching at a Cuban academic institution. *Id.*; *see also* Szubin Decl. ¶ 17. | 18. Defendants correctly characterize the rule change at issue in this case. |

Dated: March 29, 2007

Respectfully submitted,

By:   /s/ Robert L. Muse

ROBERT L. MUSE

7

(D.C. Bar No. 376369)
Muse & Associates
1320 19th St. NW, Suite M-2
Washington, DC 20036
Telephone: (202) 887-4990
Facsimile: (202) 861-6912
E-mail: MUSERL@YAHOO.COM

JOHN T. RIELY
(D.C. Bar No. 391840)
4405 East West Highway #603
Bethesda, Md. 20814
Telephone: (301) 656-3382
Facsimile: (301) 656-0729
E-mail: JTRIELY@MSN.COM
*Counsel for Plaintiffs*