IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMERGENCY COALITION TO DEFEND, EDUCATIONAL TRAVEL ("ECDET"); WAYNE S. SMITH; JOHN W. COTMAN; JESSICA KAMEN; ADNAN AHMAD, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE TREASURY; HENRY M. PAULSON, JR., Secretary of the United States Department of the Treasury; THE OFFICE OF FOREIGN ASSETS CONTROL; ADAM J. SZUBIN, Director of the Office of Foreign Assets Control, <br><br> Defendants. | Case No. 1:06-CV-01215 <br> Judge Ellen S. Huvelle |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE A SURREPLY**

Plaintiffs, by and through undersigned counsel, hereby move the Court to grant leave to file a surreply.

Plaintiffs' respectfully submit that:

1. Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on February 3, 2007.

2. Plaintiffs filed their Response on March 30, 2007.

3. Defendants filed their Reply Memorandum in Further Support of Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment on May 10, 2007.

4. That Reply Memorandum accuses Plaintiffs of "misrepresent[ing] the Supreme Court's holdings" on cases relevant to this action. (Reply Mem. 22). In fairness

to Plaintiffs, as well as the Court itself in adjudicating this case, a surreply should be allowed for the purpose of rebutting this false accusation; at the same time the surreply would address at least a few of the additional untrue assertions that appear in Defendants' Reply Memorandum: for example, (i) "before and after the [amendment to the regulation at issue] a U.S. professor who taught in Cuba was required to be a full-time permanent employee of a U.S. educational institution" (Reply Mem. 2); (ii) that Plaintiffs have "conceded" that academic freedom cases are "inapplicable to content neutral regulations" (Reply Mem. 6); (iii) that "Plaintiffs have not shown how [the challenged regulation] has actually injured them under the First Amendment" (Reply Mem. 6); (iv) that the student Plaintiffs "do not illuminate [how they] have been deprived of receiving any content about Cuba," or "were inhibited from hearing any viewpoint about Cuba" by the amended regulation challenged in this suit (Reply Mem. 6); (v) that "Plaintiffs cannot show that it is likely that a favorable decision will redress their alleged injury" (Reply Mem. 7); (vi) that the dismissal of the case in *Nat'l Wrestling Coaches Assoc. v. Dept. of Educ.*, 366 F.3d 930 (D.C. Cir. 2004) occurred "because no university that had altered its wrestling program was party to the case" (Reply Mem. 8); (vii) that the multiple declarations from professors (including *inter alia* a vice-provost and a program coordinator) involved in organizing and teaching their institution's academic programs in Cuba constitute "unadorned speculation" when they declare that such programs would be reinstated if the challenged regulation is voided (Reply Mem. 11); (viii) that the fact that this suit was brought by adversely affected professors and students,

rather than academic institutions, "*suggests* that these institutions' views may differ from Plaintiffs'" (emphasis added) (Reply Mem. 11); (ix) that notwithstanding an unprecedented preemption by Congress of U.S. policy concerning Cuba, "a particularly deferential standard of review applies to OFAC's action under the APA" and the President continues to possess "immense inherent authority [with respect to Cuba] in the realm of foreign affairs" (Reply Mem. 13); (x) that "Plaintiffs do not dispute that *Chevron* deference applies," when Plaintiffs explained in detail Congressional limitations imposed on Executive Branch actions under the Trading With the Enemy Act as those actions pertain to U.S. citizens travel to Cuba (Reply Mem. 14); (xi) that Plaintiffs "dwell extensively on their disagreement with U.S. foreign policy" (Reply Mem. 14) when in fact Plaintiffs were at pains to demonstrate that the restrictions on U.S. academic programs in Cuba at issue in this suit arose from a purely *domestic* political calculus; (xii) that "Plaintiffs cannot explain how a 500 page, inter-agency Commission Report, providing analysis and recommendations directly pertinent to the challenged action, is insufficient as a rational basis for OFAC's rulemaking" (Reply Mem. 15) when in fact that Report deals with restrictions on U.S. academic programs in Cuba in a total of three (3) paragraphs and provides no record of abuses in such programs, and hence provides no basis for their subsequent wholesale rescission by OFAC; (xiii) that Plaintiffs' case-based assertion that the government was legally required to give "careful and purposeful consideration" to decisions that may infringe the "cherished rights" of U.S. citizens implied "irrational" behavior by the government (Reply Mem. 16), rather

than an actionable failure under the APA to give the required consideration to such rights and to provide a reasoned explanation between "facts found and the choice made;" (xiv) that OFAC "rationally relied upon the Commission's analysis" when that sub-agency of the Treasury Department proffered no evidence of "abuses" of academic travel to Cuba, as was claimed by the Commission to be the very reason for the challenged OFAC rule change (Reply Mem. 16); (xv) that "Plaintiffs concede that [the regulation at issue in this lawsuit] is content and viewpoint neutral," when Plaintiffs have made no such concessions and Defendants' actions when they eliminated Plaintiffs' courses in Cuba limited both the content of those courses in terms of direct access, unmediated by the U.S. government, to various subject matters, as well as the expression of academic viewpoints that would arise from *in situ* instruction in Cuba (Reply Mem. 21); (xvi) that the *University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990) is a "leading case" on academic freedom when that case involved only what the Supreme Court referred to as an "attenuated claim" that a tenure decision should be granted a qualified privilege from an EEOC subpoena on "academic freedom" grounds (Reply Mem. 21); (xvii) that a case like *Walsh v. Brady*, 927 F.2d 1229 (D.C. Cir. 1991) that involved travel to Cuba for the purposes of inspecting and selecting commercial posters for importation to and sale in the U.S. is analogous to the First Amendment academic freedom of professors and students that is at issue in this case; (xviii) that "Plaintiffs oddly assert that the Supreme Court has repeatedly recognized that the right to travel is protected under the Fifth Amendment as a liberty interest that an individual cannot be deprived of without

4

due process of law" and further *Regan v. Wald*, 468 U.S. 222 (1984) held that the government is not required to assert a convincing national security threat to justify international travel restrictions (Reply Mem. 24) when in fact the Supreme Court cited explicitly:

"… evidence presented to both the District Court and the Court of Appeals to the effect that relations between Cuba and the United States have not been 'normal' for the last quarter of a century, and that those relations have deteriorated further in recent years due to increased Cuban efforts to destabilize governments throughout the Western Hemisphere …. In the opinion of the State Department, Cuba, with the political, economic, and military backing of the Soviet Union, has provided widespread support for armed violence and terrorism in the Western Hemisphere. Cuba also maintains close to 40,000 troops in various countries in Africa and the Middle East in support of objectives inimical to United States foreign policy interests." 468 U.S. at 243;

(xix) that the Supreme Court in *Regan v. Wald* "expressly rejected" the precedent of *Kent v. Dulles*, 357 U.S. 116 (1958) that "Freedom to travel abroad is, indeed, an important aspect of the citizen's liberty" and therefore Plaintiffs' contention that "an individual cannot be deprived of [that interest] without substantive due process of law," (Reply Mem. 24) when the Court in *Regan* actually said:

"…we think there is an *adequate basis under the Due Process Clause of the Fifth Amendment* to sustain the President's decision to curtail the flow of hard currency to Cuba -- currency that could then be used in support of Cuban adventurism -- by restricting travel." 468 U.S. at 243 (emphasis added).

Should leave to file be granted, Defendants will file their Surreply (not to exceed ten (10) pages) within five (5) days of the Court's Order.

Plaintiffs' attorney conferred by e-mail with Defendants' lead counsel with respect to this Motion, described its grounds and provided a copy before filing. Defendants state the following with respect to this Motion: While Defendants do not

agree further briefing is necessary, Defendants take no position on Plaintiffs' Motion. However, if the Court grants Plaintiffs' Motion, and Defendants deem a response to Plaintiffs' Surreply is warranted, Defendants will seek this Court's leave to file a further response.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court enter the attached proposed Order.

Dated: May 17, 2007

                                              Respectfully submitted,

By:   /s/ Robert L. Muse

       ROBERT L. MUSE
       (D.C. Bar No. 376369)
       Muse & Associates
       1320 19th St. NW, Suite M-2
       Washington, DC 20036
       Telephone: (202) 887-4990
       Facsimile: (202) 861-6912
       E-mail: MUSERL@YAHOO.COM

       JOHN T. RIELY
       (D.C. Bar No. 391840)
       4405 East West Highway #603
       Bethesda, Md. 20814
       Telephone: (301) 656-3382
       Facsimile: (301) 656-0729
       E-mail: JTRIELY@MSN.COM
       *Counsel for Plaintiffs*