UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EMERGENCY COALITION TO DEFEND EDUCATIONAL TRAVEL ("ECDET") 1717 Massachusetts Avenue, N.W., Suite 801, Washington, D.C. 20036 | x ) ) ) ) ) ) ) | |
| and | ) ) | |
| WAYNE S. SMITH, PH.D. Adjunct Professor, Department of Political Science, Latin American Studies, Johns Hopkins University, 3400 N. Charles Street, Baltimore, MD 21218 | ) ) ) ) ) ) ) ) ) | Case No. 1:06-CV-01215 Judge Ellen S. Huvelle **FIRST AMENDED COMPLAINT FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION AND FOR INJUNCTIVE AND DECLATORY RELIEF** |
| and | ) ) | |
| JOHN W. COTMAN, PH.D. Associate Professor, Department of Political Science, Howard University, 2400 Sixth Street, N.W., Washington, D.C. 20059 | ) ) ) ) ) ) ) ) | |
| and | ) ) | |
| JESSICA KAMEN Undergraduate Student, Johns Hopkins University, 2653 Maryland Avenue #6, Baltimore, MD 21218 | ) ) ) ) ) ) | |
| and | ) ) | |
| ADNAN AHMAD Undergraduate Student, Johns Hopkins University, 220 East 31st Street, Baltimore, MD 21218 | ) ) ) ) ) ) ) ) | |

and                                              )
                                                 )
ABBY WAKEFIELD                                   )
Undergraduate Student,                           )
Johns Hopkins University,                        )
1081 Washington Avenue,                          )
Portland, ME 04103                               )
                                                 )
                    Plaintiffs,                  )
                                                 )
                    v.                           )
                                                 )
                                                 )
UNITED STATES DEPARTMENT OF THE                  )
TREASURY, and                                    )
HENRY M. PAULSON, JR., Secretary, in his         )
official capacity,                               )
1500 Pennsylvania Avenue, N.W.,                  )
Washington, D.C. 20220                           )
                                                 )
and                                              )
                                                 )
THE UNITED STATES TREASURY                       )
OFFICE OF FOREIGN ASSETS CONTROL,                )
and                                              )
ADAM J. SZUBIN, Director, in his official        )
capacity,                                        )
1500 Pennsylvania Avenue, N.W.,                  )
Washington, D.C. 20220                           )
                                                 )
                                                 )
                    Defendants.                  x

## NATURE OF THE CASE

1.      This is a case concerning academic freedom – specifically the right of professors and students of higher education to, free from government interference, organize, teach and attend their institutions' courses conducted abroad.  It is brought under the First and Fifth Amendments to the United States Constitution and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.  In particular this case is about whether the government may dictate which professors of higher education in the United States may teach their institutions' courses in Cuba, how those courses must be structured, and what students from the United States may attend those courses.  The relief sought is twofold: (1) A declaration that a specific rulemaking by a sub-department of the Department of the Treasury – the Office of Foreign Assets Control – is invalid on constitutional and statutory grounds; (2) an injunction to end the enforcement of restrictions the defendants have imposed, by that rulemaking, on teaching and attending academic programs organized and conducted in Cuba by accredited United States institutions of higher learning.  Those restrictions have abridged plaintiffs' First Amendment right to academic freedom and their Fifth Amendment liberty interest in educational travel.  In addition to their constitutional infirmities, the Treasury Department restrictions on academic programs in Cuba challenged herein are invalid under the APA because they are not rationally related to the exclusively economic purpose of the statute – the Trading With the Enemy Act, 50 U.S.C. App. § 5 – under which they were promulgated.

2

## JURISDICTION AND VENUE

2.      This action arises under the First and Fifth Amendments of the United States Constitution; the Trading with the Enemy Act; and the APA.  Federal questions are present in this action under Article III of the Constitution and 28 U.S.C. § 1331.  The Court has authority to grant declaratory relief pursuant to 28 U.S.C. § 2201(a).

3.      Venue is proper in this judicial district under 28 U.S.C. § 1391(e) because the events giving rise to plaintiffs' claims occurred in this district and the lead plaintiff and the defendants are located here.

### PARTIES

### (a) Plaintiffs

### (i) Association Plaintiff

4.      Plaintiff the Emergency Coalition to Defend Educational Travel ("ECDET") is a coalition of higher education professionals who are affiliated, in academic capacities, with accredited colleges and universities across the United States.  It has over 400 members who are employed by institutions of higher learning in over 45 states. A list of ECDET's members is available at <http://www.ecdet.org/members.htm>. ECDET is dedicated to protecting the rights of academics within United States colleges and universities to design, implement, and teach academic programs in Cuba as their professional judgment dictates.  Its members are harmed by defendants' restrictions on (i) who may teach the academic courses of United States academic institutions, (ii) the structure of such courses and (iii) who may attend those courses as students.  This harm is ongoing and will continue until defendants are enjoined.

3

### (ii) Individual Plaintiffs

5.      Plaintiff Wayne S. Smith, Ph.D., is the Chairman of ECDET, as well as an Adjunct Professor of Latin American Studies at Johns Hopkins University.  He is also Director of Johns Hopkins' Cuban Exchange Program.  Dr. Smith was for many years a member of the Department of State's Foreign Service.  His first posting was as Third Secretary to the United States Embassy in Havana from 1958 until the severance of diplomatic relations in 1961.  From 1979-1982, he was Chief of the United States Interests Section in Cuba as a result of the quasi-diplomatic relations established by President Carter.  In addition to his direct service in Cuba, Dr. Smith was the Political Officer for the Office of Cuban Affairs at the Department of State from 1964-1966 and was Director of that Office from 1977-1979.  When he left the State Department in 1982 he was recognized as that agency's preeminent expert on Cuba.  Dr. Smith's many books include *The Closest of Enemies: A Personal and Diplomatic Account of the Castro Years* (1987).  In every year from 1997 to 2004 Dr. Smith taught intersession courses in Cuban attended by United States students enrolled in the Johns Hopkins Cuban Exchange program.  The courses were typically of 2-3 weeks' duration and upon successful completion students were awarded 2-3 credit hours.  As a direct consequence of the Treasury Department regulations challenged herein, Dr. Smith is prohibited from teaching Johns Hopkins' courses in Cuba.  This harm is ongoing and will continue until defendants are enjoined.

6.      Plaintiff John Walton Cotman, Ph.D. is an Associate Professor in the Department of Political Science at Howard University.  His specializations are comparative politics and international relations, with a regional focus on the Caribbean.

4

Dr. Cotman has conducted extensive research on Cuba's foreign relations as they involve regional integration efforts in the Caribbean.  He has specific expertise in Cuba's policy toward the English speaking nations of the Caribbean Community and Common Market (CARICOM).  Among his publications is the book *Cuban Transitions at the Millennium*, co-edited with Dr. Lois Linger (2000).  "*Caribbean Convergence: Contemporary Cuba-CARICOM Relations*," will appear in May 2006 in H. Michael Erisman and John M. Kirk, eds., *Redefining Cuban Foreign Policy: The Impact of the "Special Period.*" As a direct consequence of the Treasury Department regulations challenged herein, Professor Cotman is prohibited from teaching another academic institution's courses in Cuba.  This harm is ongoing and will continue until defendants are enjoined.

7.     Plaintiff Jessica Kamen is an undergraduate student at Johns Hopkins University.  She is pursuing a degree in Political Science, with minors in Spanish Language and Hispanic Culture.  She expects to graduate in 2007 with a bachelor's degree.  Ms. Kamen has taken a class taught by plaintiff Professor Wayne Smith: "Cuba and U.S. Decision-Making."  Ms. Kamen wishes to develop further her knowledge of U.S.-Cuba relations through participation in a for-credit course in Cuba.  If she is to graduate on schedule, such a course would have to be inter-sessional; that is, a course offered between semesters.  Ms. Kamen inquired in the Spring of 2006 as to what courses in Cuba are offered by Johns Hopkins.  She was told that the university has cancelled all of its programs in Cuba as a result of the OFAC rulemaking of June 16, 2004 that is the subject of this Complaint and she therefore has no opportunity to study in that country.  This harm is ongoing and will continue until defendants are enjoined.

8.      Plaintiff Adnan Ahmad is a third-year undergraduate student majoring in political science at Johns Hopkins University.  Mr. Ahmad expects to graduate in 2007 with a degree in Political Science.  In pursuit of his academic interests in international relations, urban policy, and developmental economics, Mr. Ahmad spent a winter inter-session in Cuba as a student in the Johns Hopkins University's Cuba Exchange Program. The course was of two weeks' duration and focused on Cuban culture and history.  While in Cuba, studying in the Johns Hopkins' program, he was able to conduct research on Cuban housing policy.  On completion of the program he was credited with three semester hours toward his undergraduate degree.  His interests in Cuba have developed through coursework at the Johns Hopkins Institute for Policy Studies, research at the Housing Authority of Baltimore City, and plaintiff Professor Wayne Smith's seminar on U.S.-Cuban relations.  As a result of the OFAC rulemaking challenged in this action, Mr. Ahmad cannot develop further his academic interests in Cuba through study there because Johns Hopkins no longer offers courses in that country.  This harm is ongoing and will continue until defendants are enjoined.

9.      Plaintiff Abby Wakefield is a sophomore at Johns Hopkins University. Ms. Wakefield has taken a class at her university, taught by plaintiff Professor Wayne Smith, on U.S.-Cuba relations.  To deepen and refine her understanding of this subject she wishes to take an inter-sessional Johns Hopkins' course of two weeks duration in Cuba.  Ms. Wakefield has been informed by Professor Smith, in his capacity as Director of Johns Hopkins' Cuban Exchange Program, that Johns Hopkins' inter-sessional courses will resume immediately upon the rescission of the OFAC rulemaking challenged in this case.  She has also been informed by plaintiff Smith that she has been accepted for

enrollment in the first such resumed course. Ms. Wakefield is at present unable to study in Johns Hopkins' classes in Cuba because the University canceled its courses in that country as a direct result of defendants' challenged actions. This harm is ongoing and will continue until defendants are enjoined.

### (b) Defendants

10.    Defendant Henry M. Paulson, Jr. is the Secretary of the United States Department of the Treasury and he is named as a defendant in his official capacity. Defendant Paulson heads the agency that administers United States economic sanctions imposed on Cuba and has oversight and other responsibility for the sub-department of his agency that promulgated the regulations challenged in this action.

11.    Defendant Adam J. Szubin is the acting Director of the Office of Foreign Assets Control ("OFAC"), a branch of the Department of the Treasury charged with enforcing the Cuban embargo regulations. He is named in his official capacity. Defendant Szubin heads the Office that promulgated and enforces the rulemaking that is challenged in this action.

### FACTS GIVING RISE TO THIS ACTION

### (a) Current United States Economic Sanctions Imposed on the Republic of Cuba

12.    The economic sanctions imposed on Cuba by the United States are authorized and governed by the Trading with the Enemy Act ("TWEA"), 50 U.S.C. § 5(b). That statute has the exclusively economic purpose of embargoing trade with Cuba for the purpose of denying hard currency to that country from United States' sources.

13.    Under the authority of the Trading with the Enemy Act, the Director of OFAC (by delegation from the President of the United States and the Secretary of the

Treasury), promulgates and enforces the regulations that constitute the United States economic sanctions on Cuba commonly referred to as the "Cuban embargo."

14.     The regulations promulgated and enforced by OFAC that are at issue in this action are the Cuban Asset Control Regulations ("CACR").  They are codified at 31 Code of Federal Regulations, ("C.F.R.") Part 515 (2005).

15.     The CACR prohibit, unless licensed, financial transactions between individuals and entities subject to United States' jurisdiction and the Cuban government and Cuban nationals.

16.     The rulemaking challenged herein is codified as an enforceable regulation at 31 C.F.R. § 515.565.

17.     Under the Trading with the Enemy Act the criminal penalties for violations of OFAC's Cuban regulations include prison terms of up to ten years and fines totaling up to $250,000 for individuals, and $1,000,000 fines for organizations.  (31 C.F.R. § 501.701).  OFAC may also impose civil penalties of up to $65,000 under section 16 of the Trading With the Enemy Act. *Id.*

18.     Should plaintiffs fail to conform to the regulations challenged in this action they would be subject to the penalties described in paragraph 16, above.

**(b) OFAC's June, 2004 Restrictions on United States Academic Programs in Cuba**

19.     On June 16, 2004 OFAC published new rules that restricted, *inter alia*, who may teach and who may attend academic programs in Cuba arranged and conducted by accredited United States institutions of higher learning.  OFAC also prescribed the length of such courses in Cuba.  OFAC's June 16, 2004 rulemaking was published at 69 Federal Register 115, pg. 33768 *et seq.*

8

20.    The rules promulgated by OFAC were described as "interim, final" with an effective date of June 30, 2004.  They have not been modified since that date.

21.    OFAC's June 16, 2004 rulemaking regarding United States academic programs in Cuba was said, in the Federal Register notice of that date, to implement certain recommendations contained in a May 1, 2004 Report to the President from the Commission for Assistance to a Free Cuba. The Commission was established in October 10, 2003 pursuant to a directive of President Bush.  Its members were presidential appointees to various cabinet level agencies.  The Commission was charged with submitting to the President recommendations on, among other things, bringing about an end to the current government of Cuba.

22.    The Commission's Report contained six chapters with titles ranging from "Establishing the Core Institutions of a Free Economy [in Cuba]" to "Modernizing Infrastructure."  Each chapter concluded with a set of recommendations to the President.

23.    The first chapter of the report was titled "Hastening Cuba's Transition." In a subchapter titled "Deny Revenue to the Castro Regime," the following recommendations were made by the Commission to the President:

> "Eliminate abuses of educational travel by limiting educational travel to only undergraduate or graduate degree granting institutions and only for full-semester study programs, or for shorter duration only when the program directly supports U.S. goals; requiring that the travelers be enrolled in a full-time course of study at the licensed institution; and requiring that educational institutional licenses be renewed annually, rather than bi-annually, to allow for improved enforcement of OFAC regulations."

24.    Upon information and belief no enforcement action resulting in an OFAC administered penalty was undertaken against any accredited United States academic

institution for abuses of the educational travel provisions of § 515.565 of the CACR prior to the modifications to those provisions that are the subject of this action.

25.    The June16, 2004 OFAC rulemaking adopted several of the Commission's recommendations regarding United States educational programs in Cuba.  In several instances it exceeded those recommendations.

Specifically, OFAC's June 16, 2004 rulemaking amended § 515.565 of the CACR, as follows:

(i) A requirement was added that any student who studies in Cuba under an academic institution's OFAC license must be enrolled in an undergraduate or graduate program at that licensed institution, even if his or her own institution would accept the licensed institution's program in Cuba for credit toward the student's degree.  The effect of this requirement is that plaintiff [student] cannot now enroll in another institution's program  in Cuba, but instead can only attend a course in Cuba if his or her college or university has established an educational presence in Cuba and actually offers a course in that country.

(ii) A requirement was added that educational programs in Cuba offered as part of a course at an OFAC licensed academic institution must " include a full term" and in "no instance include fewer than 10 weeks of study in Cuba."  The effect of this requirement is that students can no longer attend intersessional courses in Cuba, i.e., courses scheduled between semesters.  The result is that a student must effectively delay graduation by a semester in order to take a single course in Cuba of 10 weeks' duration or longer – but, because such courses are unviable for that very reason and are therefore not offered by

United States colleges and universities, plaintiff [student] is unable to attend an academic course in Cuba at all.

(iii) A further modification was that "participation in a structured educational program in Cuba" was limited to "full-time permanent employee[s]" of OFAC licensed academic institutions. The effect of this requirement is that adjunct professors are now barred from teaching in Cuba. At the same time the new regulation bars a professor at one university from teaching a course in Cuba offered by a different university. As a result, plaintiff Dr. Smith, because he is an adjunct professor and hence not employed full-time by Johns Hopkins University, cannot now teach a course in that University's Exchange Program in Cuba – a program in which he has taught annually from 1997 until the promulgation of the June 16, 2004 OFAC rules challenged in this action. The further effect of this requirement is that specialists in certain fields of Cuban studies can no longer teach another institution's course in Cuba. Plaintiff Professor Cotman of Howard University is therefore prohibited from imparting his specialized knowledge of Cuba's foreign relations to students from other United States colleges and universities who are attending courses in Cuba.

26.     The June 16, 2004 notice in the Federal Register provided a date of August 16, 2004 for the receipt of "written comments" on the changes to the rules. Any comments received would "be posted without change" on OFAC's website and "considered in the development of final regulations."

Upon information and belief, a number of United States academic institutions submitted comments to OFAC that explained the consequences to their educational programs in Cuba of the rule change. No comments ever appeared on the OFAC website

and no final regulations were published that indicate any consideration was given to any written comments that were submitted.

27.      According to several surveys, almost every United States institution of higher education with an academic program in Cuba reported canceling that program after the OFAC rulemaking of June 16, 2004.

## IRREPARABLE INJURY

28.      OFAC's restrictions on educational travel to Cuba are preventing the faculties and students of United States institutions of higher learning from organizing, teaching and studying academic subjects in Cuba.  Each opportunity to teach and study in Cuba that is foreclosed by OFAC's rules is a lost educational opportunity that cannot be recovered.

29.      Because each teaching and learning experience is unique and the benefits of such are incalculable in monetary terms, compensatory damages cannot cure the injuries suffered by the plaintiffs and injunctive relief is therefore required.

## FIRST CAUSE OF ACTION

### OFAC's Rulemaking Exceeded its Statutory Authority and Constitutes Arbitrary and Capricious Agency Action

30.      Plaintiffs repeat and allege the allegations contained in paragraphs 1 through 28 as though fully set forth herein.

31.      The amendments to 31 C.F.R. § 595.565 issued by OFAC on June 16, 2004 violate the Administrative Procedure Act because OFAC, the agency that promulgated those amendments, exceeded its statutory authority under the Trading with the Enemy Act by imposing restrictions on educational travel to Cuba.  Because non-economic restrictions on the activities of United States academic institutions were

adopted under a statute that has a purely economic purpose, those restrictions are not

rationally related to the purpose of that statute and are arbitrary, capricious and otherwise

not in accordance with law and are subject to judicial review under the Administrative

Procedure Act, 5 U.S.C. § 702.

32.    Defendants further exceeded the limited authority devolved on them by

Congress by restricting educational programs in Cuba in direct contravention of the

intention of Congress, stated in the Free Trade in Ideas Act of 1994, that the Executive

Branch "should not restrict travel or exchanges for informational,

educational…purposes… between the United States and any other country." (Pub. L.

103-236, § 525).  In the accompanying conference report (House Conf. Rpt. No. 103-482

(April 25, 1994), reprinted in U.S. Code. Cong. & Admin. News 481 (June 1994)),

Congress stated as follows:

> "The provisions of the conference substitute seek to protect the constitutional rights of Americans to educate themselves about the world by communicating with peoples of other countries in a variety of ways, such as by sharing information and ideas with persons around the world, traveling abroad, and engaging in educational, cultural and other exchanges with persons from around the world."

## SECOND CAUSE OF ACTION

### Violation of the First Amendment

33.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

through 31 as though the same were fully set forth at length herein.

34.    The amendments to 31 C.F.R. § 515.565 violate plaintiffs' rights of

academic freedom and association as guaranteed by the First Amendment because they

dictate, directly and indirectly, to the faculties, and students of United States colleges and

universities who may teach, who may attend, what may be taught and how it should be taught.

### THIRD CAUSE OF ACTION

#### Violation of the Fifth Amendment

35.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 33 as though the same were fully set forth at length herein.

36.    The amendments to 31 C.F.R. § 515.565 restrict and burden plaintiffs' Fifth Amendment liberty interest in organizing, teaching and participating in educational programs conducted abroad by United States institutions of higher learning.

### PRAYER FOR RELIEF

WHERFORE, plaintiffs respectfully pray that the Court:

1.  Issue a judgment pursuant to 28 U.S.C. § 2201 declaring that:

    a. Defendants' actions in amending 31 C.F.R. § 515.565 on June 16, 2004 were unlawful as violative of the First and Fifth Amendments to the Constitution of the United States.

    b. Defendants' actions in amending 31 C.F.R. § 515.565 are invalid under the Administrative Procedure Act.

2.  Enter a preliminary and permanent injunction ordering defendants and their agents, representatives, successors and those acting in concert with them to cease and desist from enforcing the amendments to 31 C.F.R. § 515.565 promulgated by OFAC on June 16, 2004.

14

3. Enter a mandatory injunction requiring defendants to rescind the amendments to 31 C.F.R. § 515.565 described herein that were promulgated on June 16, 2004.

4. Award reasonable attorney's fees and costs.

5. Grant such other and further relief as may be just and proper.

Dated July 9, 2007

Washington, D.C.

Respectfully submitted,

By:     /s/ Robert L. Muse

ROBERT L. MUSE
(D.C. Bar No. 376369)
Muse & Associates
1320 19th St. NW, Suite M-2
Washington, DC 20036
Telephone: (202) 887-4990
Facsimile: (202) 861-6912
E-mail: MUSERL@YAHOO.COM

JOHN T. RIELY
(D.C. Bar No. 391840)
4405 East West Highway #603
Bethesda, Md. 20814
Telephone: (301) 656-3382
Facsimile: (301) 656-0729
E-mail: JTRIELY@MSN.COM

*Counsel for Plaintiffs*