IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMERGENCY COALITION TO DEFEND, EDUCATIONAL TRAVEL ("ECDET"); WAYNE S. SMITH; JOHN W. COTMAN; JESSICA KAMEN; ADNAN AHMAD; ABBY WAKEFIELD, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE TREASURY; HENRY M. PAULSON, JR., Secretary of the United States Department of the Treasury; THE OFFICE OF FOREIGN ASSETS CONTROL; ADAM J. SZUBIN, Director of the Office of Foreign Assets Control, <br><br> Defendants. | Case No. 1:06-CV-01215 <br> Judge Ellen S. Huvelle |

**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

By and through undersigned counsel, Defendants hereby respond to Plaintiffs' Amended Complaint, pursuant to Rule 15. Pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure, Defendants hereby respectfully move this Court to dismiss the Amended Complaint, or in the alternative, to grant summary judgment in favor of Defendants. As grounds for this Motion, Defendants state that the Amended Complaint fails to cure the deficiencies identified in Defendants' prior Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. *See* Dkt. ## 8, 10 (Motion); Dkt. #17 (Reply); Dkt. #20 (Response to Plaintiffs' Surreply). The three memoranda embodying Defendants' Motion are herein incorporated by reference and Defendants respectfully refer the Court to those submissions. Because the amendment fails to cure the deficiencies identified in Defendants' Motion, this Court should dismiss this action, or in the

alternative, grant summary judgment to Defendants.

A supplemental memorandum setting forth law and argument in support of this renewed Motion is submitted herewith.

          Respectfully submitted,

          PETER D. KEISLER
          Assistant Attorney General

          JEFFREY A. TAYLOR
          United States Attorney

By:    /s/ Hannah Y.S. Chanoine
       SANDRA M. SCHRAIBMAN
       Assistant Branch Director, Civil Division
       HANNAH Y.S. CHANOINE
       Trial Attorney
       U.S. Department of Justice
       Civil Division
       <u>Mailing Address</u>
       P.O. Box 883
       Washington, DC  20044
       <u>Delivery Address</u>
       20 Massachusetts Avenue, NW, Rm 7340
       Washington, DC  20001
       Telephone:  (202) 305-2318
       Facsimile:   (202) 616-8202
       E-mail: hannah.chanoine@usdoj.gov
       *Counsel for Defendants*

Dated:  July 19, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMERGENCY COALITION TO DEFEND, EDUCATIONAL TRAVEL ("ECDET"); WAYNE S. SMITH; JOHN W. COTMAN; JESSICA KAMEN; ADNAN AHMAD; ABBY WAKEFIELD, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE TREASURY; HENRY M. PAULSON, JR., Secretary of the United States Department of the Treasury; THE OFFICE OF FOREIGN ASSETS CONTROL; ADAM J. SZUBIN, Director of the Office of Foreign Assets Control, <br><br> Defendants. | Case No. 1:06-CV-01215 <br> Judge Ellen S. Huvelle |

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

By and through undersigned counsel, pursuant to Local Rule 7.1(h), Defendants submit this statement of material facts as to which there is no genuine issue in support of Defendants' Motion to Dismiss the Amended Complaint, or in the Alternative, Motion for Summary Judgment.[1]

**Background of the Parties**

1.  The Office of Foreign Assets Control ("OFAC") is the office within the Department of

---

[1] The Amended Complaint has been altered solely to add the new student Plaintiff, Abby Wakefield. Accordingly, the addition of Ms. Wakefield in ¶ 8 below reflects the only substantive change between this Statement and the previous 7.1(h) Statement submitted with Dkt. No. 10 (Defendants' Motion for Summary Judgment).

1

      the Treasury ("Treasury") that is principally responsible for administering United States economic sanctions programs to implement U.S. foreign policy and national security goals.  Declaration of Adam J. Szubin, Director of OFAC ("Szubin Decl.") ¶¶ 4, 5 (Dkt. ## 8, 10).

2.    OFAC has been delegated authority under the Trading With the Enemy Act ("TWEA"), 50 U.S.C. App. §§ 1-44, to regulate transactions in which Cuba or a Cuban national has an interest.  *See* Szubin Decl. ¶¶ 4, 6-9, 11.

3.    Plaintiff ECDET characterizes itself as "a coalition of higher academic professionals who are affiliated, in academic capacities, with accredited colleges and universities across the United States.  Compl. ¶ 4.  ECDET's membership does not include academic institutions, but only individual academics.  *See id.* http://www.ecdet.org/members.htm#4, last visited Feb. 2, 2007.

4.    Plaintiff Wayne Smith is a part-time employee of Johns Hopkins University.  *See* Compl. ¶¶ 5, 25(iii).

5.    Plaintiff John Cotman is employed by Howard University.  *See* Compl. ¶ 6.

6.    Plaintiff Jessica Kamen alleges that she is an undergraduate student at Johns Hopkins University, scheduled to graduate in 2007.  *See* Compl. ¶ 7.

7.    Plaintiff Adnan Ahmad is an undergraduate student at Johns Hopkins University, who alleges that he expects to graduate in 2007.  *See* Compl. ¶ 8.  Ahmad has already traveled to Cuba through Johns Hopkins University's Cuba Exchange program, spending two weeks in Cuba during the winter, and receiving three semester hours for the two week trip towards his undergraduate degree.  *Id.*

8. Plaintiff Abby Wakefield is an undergraduate student at Johns Hopkins University, who alleges that she is a sophomore as of July 9, 2007. *Id.* ¶ 9

**General Background of the Regulation of Educational Travel under the CACR**

9. A major purpose of the embargo has been to deny the Castro government hard currency which could be used for purposes inimical to the interests of the United States. *See* Szubin Decl. ¶ 14.

10. The Cuban Asset Control Regulations, ("CACR") have long restricted transactions involving travel to Cuba, including educational travel to Cuba. *See* Szubin Decl. ¶ 14.

11. The government's policy regarding permitted travel transactions has evolved over the course of the embargo to reflect changing international developments and different Administration policies. *See* Szubin Decl. ¶ 14.

12. Significant changes to the Regulations with regard to educational travel regarding Cuba have occurred over the past three decades. *See* Szubin Decl. ¶ 14.

**The 2004 Amendments to 31 C.F.R. § 515.565**

13. On October 10, 2003, President Bush established an inter-agency Commission for Assistance to a Free Cuba ("CAFC I" or "the Commission"). *See* Szubin Decl. ¶ 15; President George W. Bush, Rose Garden Speech (Oct. 10, 2003), available at http://www.whitehouse.gov/news/releases/2003/10/20031010-2.html, *last visited* Jan. 4, 2007.

14. Among the purposes of the Commission was to identify ways to hasten the arrival of Cuba's peaceful transition from a dictatorship to a free and open society. *See* Szubin Decl. ¶ 15; President George W. Bush, Rose Garden Speech (Oct. 10, 2003), available at

http://www.whitehouse.gov/news/releases/2003/10/20031010-2.html, *last visited* Jan. 4, 2007; *see also* http://www.state.gov/p/wha/rt/cuba/c12238.htm, *last visited* Jan. 4, 2007

15. The Commission's report ("the CAFC I Report" or "the Report"), was released to the public on May 6, 2004. *See* Szubin Decl. ¶ 15; Comm'n for Assistance to a Free Cuba, Report to the President (2004), available at http://www.state.gov/p/wha/rt/cuba/commission/2004/, *last visited* Jan. 4, 2007.

16. In a section of Chapter 1 of the Report discussing the denial of revenues to the Castro regime, the Report identified tourism as one of the regime's economic lifelines and Cuba's single largest revenue source.[2] Administrative Record ("AR") (dkt. no. 7) at 41, 61-62; *see* Szubin Decl. ¶ 16.

17. In discussing the educational travel program in place at that time under the CACR, which included short-term licenses for structured educational activities, the Report also stated that "[i]n practice, while there are well-meaning participants who use this license category as intended, other travelers and academic institutions regularly abuse this license category and engage in a form of disguised tourism." AR at 63; *see* Szubin Decl. ¶ 16. The Report went on to state that

> Many institutions use Cuba "study-tour programs" to generate revenues for other programs and most accept students not enrolled in their institution. A large number of programs are for a short duration, allow for limited interaction with the Cuban people, and include lengthy unscheduled time periods to permit largely tourist activities to be accomplished. Such travel does not promote a genuinely free exchange of ideas between Cubans and American students. Evidence indicates that the majority of visits by U.S. students are organized by or coordinated through Cuban state travel and tour entities, are highly controlled by

---

[2] Chapter 1 of the Report, AR 39-85, is excerpted in an appendix to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment.

> Cuban state security officials, and allow for only limited interaction with the average Cuban citizen. Moreover, the regime has often used the visits by U.S. education groups to cultivate the appearance of international legitimacy and openness to the exchange of ideas.

AR at 63; *see* Szubin Decl. ¶ 16.

18. The CAFC Report made the following recommendation to the President:

> Eliminate abuses of educational travel by limiting educational travel to only undergraduate or graduate degree granting institutions and only for full-semester study programs, or for shorter duration only when the program directly supports U.S. policy goals; requiring that the travelers be enrolled in a full-time course of study at the licensed institution; and requiring that educational institutional licenses be renewed annually, rather than bi-annually, to allow for improved enforcement of OFAC regulations.

AR at 65; *see* Szubin Decl. ¶ 16.

19. In response to the President's directive, OFAC modified several portions of the Regulations to incorporate the recommendations of the CAFC Report, including those pertaining to educational travel. See 69 Fed. Reg. 33768 (June 16, 2004). Section 515.565 was modified to remove the authorization for certain educational activities involving Cuba by secondary schools. *Id.* at 33769. The duration of a license issued to an accredited college or university under this section was shortened from two years to one. *Id.* at 33769-70. The June 16, 2004 amendments also modified section 515.565 to require that any student utilizing an institution's license to study in Cuba be enrolled in an undergraduate or graduate degree program at that institution, and clarified that employees traveling under an institution's license must be full-time permanent employees of the licensed institution. *Id.* at 33770. Additionally, section 515.565 was amended to require that the following three types of educational activity in Cuba be no shorter than 10 weeks

in duration: (1) structured educational programs in Cuba offered as part of a course at the licensed institution; (2) formal courses of study at Cuban academic institutions; and, (3) teaching at a Cuban academic institution. *Id.*; *see also* Szubin Decl. ¶ 17.

        Respectfully submitted,

        PETER D. KEISLER
        Assistant Attorney General

        JEFFREY A. TAYLOR
        United States Attorney

By:   /s/ Hannah Y.S. Chanoine
        SANDRA M. SCHRAIBMAN
        Assistant Branch Director, Civil Division
        HANNAH Y.S. CHANOINE
        Trial Attorney
        U.S. Department of Justice
        Civil Division
        Mailing Address
        P.O. Box 883
        Washington, DC 20044
        Delivery Address
        20 Massachusetts Avenue, NW, Rm 7340
        Washington, DC 20001
        Telephone: (202) 305-2318
        Facsimile: (202) 616-8202
        E-mail: hannah.chanoine@usdoj.gov
        *Counsel for Defendants*

Dated: July 19, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EMERGENCY COALITION TO DEFEND, EDUCATIONAL TRAVEL ("ECDET"); WAYNE S. SMITH; JOHN W. COTMAN; JESSICA KAMEN; ADNAN AHMAD; ABBY WAKEFIELD, <br><br>  Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE TREASURY; HENRY M. PAULSON, JR., Secretary of the United States Department of the Treasury; THE OFFICE OF FOREIGN ASSETS CONTROL; ADAM J. SZUBIN, Director of the Office of Foreign Assets Control, <br><br>  Defendants. | Case No. 1:06-CV-01215 <br> Judge Ellen S. Huvelle |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT, OR IN THE
ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

INTRODUCTION

In an attempt to repair their standing problems, Plaintiffs have now amended their Complaint solely to add a new student Plaintiff.  *See* Am. Comp. ¶ 9; *id.* ¶¶ 10-11 (updating official capacity defendants).  The legal arguments supporting Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, apply with equal force to the Amended Complaint.  *See* Dkt. ## 8, 10 (Motion) ("Mem."); Dkt. #17 (Reply) ("Rep."); Dkt. #20 (Response to Plaintiffs' Surreply) ("Resp.").  Defendants hereby renew their Motion, and incorporate by reference the three prior memoranda embodying that briefing.  Thus, this case should be dismissed, or summary judgment should be granted, because (1) Plaintiffs have not demonstrated constitutional and prudential standing; (2) Plaintiffs' APA claims are meritless, as OFAC reasonably interpreted the Trading With the Enemy Act (TWEA) and validly exercised its authority; (3) the challenged content-neutral regulation has not deprived Plaintiffs of any First Amendment rights; and (4) Supreme Court precedent and its progeny forecloses their Fifth Amendment claims.  Because the only change in the Amended Complaint is the addition of Johns Hopkins sophomore Abby Wakefield, this supplemental Memorandum's focus is limited to why her addition does not cure the standing deficiencies previously briefed for this Court.

ARGUMENT

Defendants argued that this action should be dismissed for lack of subject matter jurisdiction for want of standing.  Mem. 16-26; *see also* Rep. 1-12; Resp. 1-6.  In particular, Plaintiffs had (1) failed to establish the constitutional standing requirement "injury-in-fact" that is "actual or imminent," Mem. 19-22; *see also* Rep. 1-5; Resp. 1-3; (2) failed to establish the separate constitutional standing requirement of redressability, in light of the absence of a single academic institution as party to this case, Mem. 22-24; *see also* Rep. 7-12; Resp. 3-6; and (3)

1

failed to meet the high standard imposed by prudential standing limitations, in that Plaintiffs assert the rights and interests of third party institutions, Mem. 24-26; *see also* Rep. 12-13. Defendants observed in their Response to Plaintiffs' Surreply that, in addition to these three independent standing problems, the passage of time – specifically, the occurrence of Johns Hopkins 2007 commencement after the original close of briefing – may have rendered moot the claims of the undergraduate Plaintiffs Jessica Kamen and Adnan Ahmad, both of whom were undisputedly scheduled to graduate in 2007. See Resp. 5 n.4. Responding to this suggestion of mootness, Plaintiffs amended their Complaint to add Ms. Wakefield, a Johns Hopkins sophomore.[1] Am. Comp. ¶ 9.

According to the Amended Complaint, Ms. Wakefield has taken a class on U.S.-Cuba relations taught by Plaintiff Professor Smith – and wishes to "deepen and refine her understanding of this subject" by taking "an inter-sessional Johns Hopkins course of two weeks duration in Cuba." *Id.* Ms. Wakefield has allegedly been informed by Professor Smith, "in his capacity as Director of Johns Hopkins' Cuban Exchange Program, that Johns Hopkins' inter-sessional courses will resume immediately upon the rescission of the OFAC rulemaking challenged in this case." *Id.* Ms. Wakefield has also been allegedly "informed by plaintiff Smith that she has been accepted for enrollment in the first such resumed course." *Id.* Her alleged injury, apparently, is that she "is at present unable to study in Johns Hopkins' classes in Cuba" because of the university's cancellation of its in-Cuba courses "as a direct result of defendants' challenged actions." *Id.*

The addition of Wakefield to address mootness, however, does not solve Plaintiffs' other

---

[1] The Amended Complaint neither confirms nor denies that Kamen and Ahmad graduated on May 17, 2007. See http://www.jhu.edu/commencement/, *last visited* June 10, 2007.

standing problems. Like the other (possibly former) undergraduate plaintiffs Kamen and Ahmad, Wakefield has no injury-in-fact, because (1) she may pursue study for a semester at a Cuban academic institution, (2) she can "deepen and refine" her understanding of the subject in numerous other ways, and (3) she could not have reasonably expected to participate in a class that did not exist at matriculation.[2] Mem. 19-22; *see also* Rep. 4.

Wakefield's alleged injuries are also not cognizable under the First Amendment, because (1) to the extent the First Amendment uniquely protects "academic freedom" separately from other speech (if at all), or that "academic freedom" protections exist in the form articulated in Justice Frankfurter's concurrence in *Sweezy v. New Hampshire*, 354 U.S. 234 (1957), those freedoms inhere in the institution, not students or professors, Mem. 21-22, 36-39, Rep. 5-6; (2) *Sweezy* and its progeny are inapplicable to content-neutral regulations such as the one challenged in this action, Mem. 36-40, Rep. 6, Resp. 7-9; and (3) Wakefield's allegations do not show how a geographical restriction on her studies is anything other than content or viewpoint neutral, Mem. 39-40; Rep. 6-7.

Likewise, even if, *arguendo*, Wakefield adequately alleged an "actual or imminent" "injury in fact," Defendants' arguments regarding redressability and third party standing apply equally to Wakefield. *See* Mem. 22-26; *see also* Rep. 7-13, Resp. 3-6. Plaintiffs do attempt to

---

[2] In contrast to Kamen, Wakefield's allegation of injury does not encompass the claim that her graduation would be delayed. *Compare* Am. Comp. ¶ 7 *with* ¶ 9; *see* Mem. 20; Rep. 3-4. In addition, apparently in response to Defendants' demonstration that neither Kamen nor Ahmad had shown how they would have been granted entry into the Johns Hopkins Cuba program were it reinstated, *see* Mem. 21; Rep. 4-5 (analyzing student injury-in-fact assertions in light of Plaintiffs' submission of evidence describing competitive admissions process), Wakefield's allegation of injury includes assertions that Plaintiff Smith has granted her acceptance into the program. Am. Comp. ¶ 9. As discussed in this Memorandum, however, Smith's own standing problems have not been cured by the Amended Complaint, and thus Wakefield cannot depend on Smith's own statements as a fount of either injury-in-fact or redressability.

manufacture redressability by asserting that Plaintiff Smith has informed her "in his capacity as Director of Johns Hopkins Cuban Exchange Program, that Johns Hopkins' inter-sessional courses will resume immediately upon the rescission of the OFAC rulemaking challenged in this case."  Am. Comp. ¶ 9.  Like Plaintiffs' prior efforts to inject redressability into the case by proffering statements by individuals similarly situated to themselves, *e.g.,* Rep. 9-12, Smith cannot demonstrate that he can make such authoritative promises on Johns Hopkins' behalf, particularly in light of that institutions' notable absence from this case as a party.  *See* Mem. 22-24; Rep. 7-12; Resp. 3-6.  In addition, Smith himself has his own injury-in-fact and redressability problems, *see* Mem. 11, 19-22, Rep. 1-2, 7-12; Resp. 1-6, and thus Wakefield cannot depend on any statements from Smith as a basis for redressability of her alleged injuries.

## CONCLUSION

For the foregoing reasons, and the reasons expressed in Defendants' three prior submissions embodying Defendants' original dispositive Motion, the Court should dismiss Plaintiffs' claims or, in the alternative, grant Defendants summary judgment.

Respectfully submitted,

| | | |
|---|---|---|
| PETER D. KEISLER<br>Assistant Attorney General | By: | /s/ Hannah Y.S. Chanoine<br>SANDRA M. SCHRAIBMAN<br>Assistant Branch Director, Civil Division |
| JEFFREY A. TAYLOR<br>United States Attorney | | HANNAH Y.S. CHANOINE<br>Trial Attorney<br>U.S. Department of Justice, Civil Division<br><u>Mailing Address</u><br>P.O. Box 883, Washington, DC  20044<br>Telephone:  (202) 305-2318<br>Facsimile:   (202) 616-8202<br>E-mail: hannah.chanoine@usdoj.gov<br>*Counsel for Defendants* |

Dated: July 19, 2007